IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


THOMAS LEE GARVIN                        )
                                         )
v.                                       )        No. 3:10:0498
                                         )
MICHAEL J. ASTRUE,                       )
        Commissioner of Social Security  )



To: The Honorable Thomas A. Wiseman, Senior District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff could perform unskilled and sedentary work during the relevant time period is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 11) should be denied.


## I. INTRODUCTION

The plaintiff filed his initial applications for DIB and SSI in August of 2003, alleging a disability onset date of March 17, 2003, due to back pain. (Tr. 67-69.)  His applications were

denied initially and upon reconsideration and he did not seek further review of those applications. (Tr. 28, 30, 32, 37, 39.)  The plaintiff reapplied for DIB on August 4, 2004, and for SSI in September of 2005.[1] (Tr. 16, 25.)   His applications were denied initially and upon reconsideration. (Tr. 41-48.)   A hearing before Administrative Law Judge ("ALJ") Robert Haynes was held on April 16, 2008. (Tr. 469-97.)  The ALJ delivered an unfavorable decision on June 27, 2008 (tr. 16-24), and the plaintiff sought review by the Appeals Council. (Tr. 11-12.)  On March 23, 2010, the Appeals Council denied the plaintiff's request for review (tr. 6-8), and the ALJ's decision became the final decision of the Commissioner.

## II. BACKGROUND

The plaintiff was born on June 6, 1964, and was 38 years old as of March 17, 2003, his alleged onset date. (Tr. 25.)  He completed the ninth grade (tr. 473) and worked as a high rise window cleaner and as a stocker at a grocery store.  (Tr. 122, 477.)

### A. Chronological Background: Procedural Developments and Medical Records

Between August of 2001 and January of 2003, the plaintiff went to Vanderbilt University Hospital Department emergency room ("VUH") on four occasions with complaints of lower back pain and he was diagnosed with lumbar back pain and "probable" disk herniation, was prescribed Flexeril,[2] Lortab,[3] and Motrin, and was referred to Vine Hill Community Clinic

---

[1] As the plaintiff pointed out, the record does not include his 2003 SSI application, his 2004 DIB application, or his 2005 SSI application. Docket Entry No. 12 at 1-2 nn.1-3.

[2] Flexeril is a skeletal muscle relaxant.  Saunders Pharmaceutical Word Book 294 (2009) ("Saunders").

[3] Lortab is a narcotic analgesic.  Saunders at 415.

("Vine Hill"). (Tr. 256-62.)  The plaintiff presented to Vine Hill on two occasions in January of 2003, and he was found to have significant range of motion reductions in leg flexion and pelvic movement, was diagnosed with back pain, and was prescribed Lortab, Flexeril, and Ibuprofen. (Tr. 253-56.)

On February 25, 2003, the plaintiff presented to Vanderbilt Outpatient Neurosurgery Clinic ("VONC") with complaints of lower back pain. (Tr. 247-52.)  Dr. Paul Boone, a neurosurgeon, examined the plaintiff and noted that bending and twisting exacerbated his back pain. (Tr. 248.)  Dr. Boone diagnosed the plaintiff with lower back pain and lumbar spondylitic disease, recommended that he undergo a lumbar fusion procedure, and prescribed Soma[4] and Lortab. (Tr. 247-52.)  On March 17, 2003, the plaintiff was hospitalized for a "[p]osterior lumbar interbody fusion," a "decompressive lumbar laminectomy," and a "bilateral pedicle screw fixation." (Tr. 238-42.)   On March 20, 2003, the plaintiff was discharged and prescribed OxyContin,[5] Soma, and Lortab.

On July 29, 2003, the plaintiff returned to VONC with complaints of lower back pain and he reported that he was able to walk without significant lower back pain but that prolonged standing, bending, and twisting exacerbated his lower back pain. (Tr. 235-36.)  Dr. Boone diagnosed the plaintiff with "persistent, intermittent axial and mechanical low back pain," noted that he was "essentially stable with respect to his symptomology," encouraged him to perform his physical therapy at home, and prescribed Lortab and Soma. (Tr. 235-37.)  The plaintiff returned to Dr. Boone in October of 2003, and in January of 2004, with complaints of radiating lower back pain and related that standing and walking did not affect his back pain but twisting

---

[4] Soma is a skeletal muscle relaxant.  Saunders at 653.

[5] OyxContin is a narcotic in controlled release tablet form.  Saunders at 524.

and bending exacerbated it. (Tr. 228-34.) Dr. Boone diagnosed the plaintiff with "persistent and constant mechanical low back pain" and prescribed Lortab, Soma, OxyContin and Baclofen.[6] Id.

On June 15, 2004, the plaintiff returned to Vine Hill with complaints of lower back pain that varied between a six or seven out of ten in severity and he was diagnosed with chronic lower back pain and prescribed Soma and Lortab. (Tr. 226-28.) On June 29, 2004, Dr. Boone examined the plaintiff, diagnosed him with back pain and lumbar spondylosis, and prescribed Lortab and Soma. (Tr. 224-26.)

Between January of 2004 and January of 2007, the plaintiff presented to Tennessee Professional Associates ("TPA") on multiple occasions for management of his back pain. (Tr. 311-70.) The plaintiff was diagnosed with chronic lower back pain due to post laminectomy syndrome, anxiety, and insomnia; was given back strengthening exercises; and was prescribed OxyContin, Lortab, Pepcid,[7] Soma, Xanax, Elavil[8], and a transcutaneous electrical nerve simulation ("TENS") unit.[9] Id. Treatment notes from the TPA indicated that the plaintiff exhibited "no side effects from" and no "evidence of addiction to" his medication. Id.

On August 25, 2005, the plaintiff presented to Centennial Medical Center ("Centennial") emergency room with complaints of an infected wound in his lower back that formed near his previous surgical incision. (Tr. 416-18.) The plaintiff was admitted to the hospital and found to have a steady gait (tr. 416) and "[g]ood motor strength in both upper and lower extremities" (tr. 421); diagnosed with "probable discitis," an infected back wound, and anemia; and

---

[6] Baclofen is a muscle relaxant and an antispasticity agent. Saunders at 77.

[7] Pepcid is prescribed for gastro-esophogeal reflux disease (GERD). Saunders at 545.

[8] Elavil is a tricyclic antidepressant. Saunders at 256.

[9] According to Drugs.com, a TENS unit is a small, battery powered device that is used to control many types of pain by sending mild electrical signals through electrodes attached to the skin. Drugs.com, "How to use a TENS unit" at http://www.drugs.com/cg/how-to-use-a-tens-unit.html.

prescribed intravenous antibiotics. (Tr. 414-22.)   August 26, 2005, MRIs of the plaintiff's lumbar spine and thoracic spine revealed diskitis and disc bulges (Tr. 439-42.)  On September 9, 2005, the plaintiff was discharged from Centennial, was found to have "[g]ood motor strength in both upper and lower extremities," and was diagnosed with diskitis, malnutrition, anemia, abdominal pain, and septicemia.[10] (Tr. 419-20.)

The plaintiff also had multiple medical assessments and evaluations regarding the severity of his lower back pain.  On December 15, 2004, Dr. R. Payne, an examining consultative physician with Alternative Testing Services, Inc., completed an assessment (tr. 264-72) and found that the plaintiff's range of motion in his cervical spine was normal, that his dorsolumbar spine range of motion was reduced, and that his strength was five out of five in all major muscle groups.  (Tr. 268.)  Dr. Payne concluded that in an eight hour workday the plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for at least two hours, and sit for six hours. (Tr. 271.)

On January 4, 2005, Dr. Nathaniel Robinson, a DDS non-examining consultative physician, completed a Physical Residual Functional Capacity Assessment ("RFC") (tr. 274-81) and found that the plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, and stand/walk or sit for six hours in an eight hour workday. (Tr. 275.)  Dr. Robinson opined that the plaintiff's ability to push/pull was not limited and his ability to climb, balance, stoop, kneel, crouch, and crawl was occasionally limited due to back pain. (Tr. 275-76.)  Dr. Robinson also noted that Dr. Payne's medical assessment "appears overly restrictive for standing since the claimant has no neurological deficits and no trouble getting on and off the examination table." (Tr. 280.)

---

[10] Septicemia is the presence of bacteria or bacterial toxins in the blood stream. Dorland's Illustrated Medical Dictionary 1681 (30th ed. 2003) ("Dorland's").

On April 26, 2006, Dr. Bruce Davis, a DDS examining consultative physician, completed a medical assessment (tr. 283-85) and found that the plaintiff could lift/carry 10 to 20 pounds occasionally and 10 pounds frequently and in an eight hour workday could stand/walk for four hours and sit for eight hours. (Tr. 285.)  Dr. Davis opined that the plaintiff's ability to bend, squat, and climb was limited and that he should avoid "exposure to liver damaging chemicals." *Id.*  He also noted that the plaintiff's thoracolumbar flexion was reduced and that he had a "slow stiff gait." (Tr. 284.)

On May 30, 2006, Dr. Thomas L. Pettigrew, Ed.D., a DDS examining consultative psychologist, completed a psychological evaluation (tr. 286-289A) and noted that the plaintiff drove himself to the appointment and that he was able to walk without obvious impairment. (Tr. 286.)  Dr. Pettigrew opined that the plaintiff showed no signs of depression, anxiety, or psychosis, maintained socially appropriate behavior, and "revealed no evidence of impaired attention, concentration, or ability to complete simple tasks." (Tr. 289.)  The plaintiff related that he "is independent in meeting all of his personal needs," drives, does laundry, shops, and does minimal household chores. *Id.*

On June 12, 2006, Dr. Denise Bell, a DDS non-examining consultative physician, completed a physical RFC (tr. 290-95) and found that the plaintiff could lift 20 pounds occasionally and 10 pounds frequently and that in an eight hour workday stand/walk for at least two hours and sit for about six hours, but that he must periodically alternate between sitting and standing. (Tr. 291.)  Dr. Bell also noted that the plaintiff was able to frequently climb, balance, stoop, kneel, and crawl. (Tr. 292.)

On June 12, 2006, Dr. George T. Davis, Ph.D., a non-examining DDS consultant, completed a Psychiatric Review Technique Form ("PRTF") (tr. 296-309) and diagnosed the

plaintiff with dependent personality disorder traits and a substance abuse disorder. (Tr. 303-04.) Dr. Davis concluded that the plaintiff's activities of daily living were not restricted, that he had mild difficulties in maintaining social functioning and concentration, persistence, or pace, and that he had no episodes of decompensation. (Tr. 306.)

Between April of 2007 to February of 2008, the plaintiff presented to Dr. John Arradondo on multiple occasions with complaints of lower back pain and he reported that his pain ranged from three to ten out of ten. (Tr. 382-406.) Dr. Arradondo noted that the plaintiff had a decreased range of motion in his neck and back and an unsteady gait; diagnosed the plaintiff with lower back pain, anxiety, and insomnia; and prescribed Darvocet,[11] Neurontin,[12] Percocet,[13] Robaxin,[14] Ultram,[15] Clonazepam,[16] and Ibuprofen. *Id.* The plaintiff also reported on three occasions that his "current treatment [was] making a difference in [his] life." (Tr. 384, 393, 401.)

On April 23, 2008, Dr. Arradondo completed a physical Medical Source Statement of Ability to Do Work-Related Activities ("Medical Source Statement") on the plaintiff (tr. 449-50) and opined that in an eight hour workday he could never/rarely lift/carry less than ten pounds, could stand/walk or sit less than two hours, could never/rarely push/pull with his hands or feet,

---

[11] According to Drugs.com, Darvocet is "used to relieve mild to moderate pain with or without fever." Drugs.com, "Darvocet" at http://www.drugs.com/darvocet.html.

[12] Neurontin is used to treat nerve pain. Saunders at 488.

[13] Percocet is an opioid painkiller and anti-inflammatory medication. Physician's Desk Reference 1121 (64th ed. 2010) ("PDR").

[14] Robaxin is a skeletal muscle relaxant. Saunders at 619.

[15] Ultram is a centrally acting opioid analgesic that is used to treat arthritis and musculoskeletal pain. PDR at 2693.

[16] Clonazepam is prescribed for panic disorder. Saunders at 169.

and could never/rarely stoop or crouch. (Tr. 449.) Dr. Arradondo concluded that the plaintiff could only work less than two hours in an eight hour workday, that he would be absent from work four days each month, that he would have to take ten unscheduled breaks during an eight hour workday, that he would require a one hour break before returning to work, and that he could only tolerate low stress jobs. (Tr. 450.)

### B. Hearing Testimony

At the hearing before the ALJ, the plaintiff was represented by counsel, and the plaintiff and Dr. Kenneth Anchor, Ph.D., a vocational expert ("VE"), testified. (Tr. 469-97.) The plaintiff testified that he completed the ninth grade (tr. 473), has used "illegal street drugs" in the past (tr. 476), and has worked as a window cleaner and stocker at a grocery store. (Tr. 477.) He related that he has not been able to work since March 17, 2003, when he had back surgery, and that the surgery reduced his pain for only three or four months. (Tr. 477-78.)

The plaintiff testified that his back pain is constant and radiates down his legs, makes it difficult for him to put on his socks and shoes, and is seven or eight out of ten in severity when he takes his medication. (Tr. 478-79.) He related that he has anxiety and panic attacks, that his back pain increases when he sits or walks for "too long," that his back stiffens if he stands or sits for 30 to 45 minutes at a time, that during an eight hour workday he is able to stand/walk "off and on" for a couple of hours and sit for three hours, that he uses a cane, and that he is only able to lift five pounds and carry five to ten pounds. (Tr. 480-85.) The plaintiff testified that he does not drive but that he is able to make his bed, do laundry, prepare simple meals, and occasionally shop for groceries. (Tr. 486-88.)

The VE, consistent with the Dictionary of Occupational Titles, classified the plaintiff's past relevant work as a janitor as medium and semi-skilled, as a window washer as medium and unskilled, and as a grocery stocker as medium and unskilled. (Tr. 491, 496.) The ALJ asked the VE to consider Dr. Payne's assessment (tr. 264-73) and the work that the plaintiff could perform, and the VE answered that he could perform sedentary work and a narrow range of light work. (Tr. 492.) The ALJ then asked the VE to consider Dr. Davis's medical assessment (tr. 283-85) and the work that the plaintiff could perform, and the VE replied that he could perform sedentary work "and a much larger range of light jobs." (Tr. 493.) The ALJ next asked the VE to consider Dr. Robinson's physical RFC (tr. 274-81) and the work that the plaintiff could perform, and the VE answered that he could do both sedentary and light work. *Id.* The ALJ then asked the VE to consider Dr. Bell's physical RFC (tr. 290-95) and the work that the plaintiff could perform, and the VE answered that he could perform sedentary work and "a narrow range of light jobs."

The ALJ asked the VE to consider what type of work the plaintiff could perform if he could stand/walk for two hours, needed a sit/stand option, and was restricted in his ability to bend, twist, and squat. (Tr. 493-94.) The VE replied that the plaintiff could work as an electronics tester, machine tender, and table worker and he classified the electronics tester job as light work and the machine tender and table worker jobs as being both sedentary and light work. (Tr. 494.) The VE then testified that, if the plaintiff's "difficulties with pain are at the severe or extreme level for their intensity, frequency, and duration, and that is if they are chronic, persistent, unremitting, and unmanagement, and unresponsive to other forms of treatment" the "requirements of sustaining full-time work activity in a conventional job setting would present difficulties." *Id.* Finally, the plaintiff's attorney asked the VE what type of work the plaintiff could perform if he could lift five pounds and, in an eight hour day, stand/walk for two hours and

sit for three hours, and the VE answered that the plaintiff would be precluded from working. (Tr. 496.)

# III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on June 27, 2008. (Tr. 16-24.)  Based on the record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since March 17, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

* * *

3. The claimant has the following severe impairments: lumbar degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

* * *

5. The claimant has the residual functional capacity to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday with a sit/stand option, and restricted bending, and squatting.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7.  The claimant was born on June 6, 1964, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 17, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-24.)

# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g).  *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion."

*Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Jones* v. *Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).

A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a "severe impairment." A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be

found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *See, e.g., Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595; *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v.*

*Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Her*, 203 F.3d at 391. *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The Five-Step Inquiry

In this case, the ALJ decided the plaintiff's claim at step five of the five-step process. (Tr. 22-23.) At step one, the ALJ found that the plaintiff demonstrated that he had not engaged in substantial gainful activity since June 25, 2003, the alleged onset of disability. (Tr. 18.) At step two, the ALJ determined that the plaintiff's lumbar degenerative disc disease was a severe impairment. *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation 4. (Tr. 19.) At step four, the ALJ determined that the plaintiff had an RFC to perform a limited range of sedentary work but could not perform his past jobs as a window washer, janitor, or grocery stocker. (Tr. 22-23.) At step five, the ALJ concluded that the plaintiff's RFC allowed him to perform work as an electronics tester, machine tender, and table worker. (Tr. 23.)

**C. Plaintiff's Assertions of Error**

The plaintiff contends that the ALJ's residual functional capacity assessment and corresponding hypothetical questions were not clear or specific, that the VE's testimony was not consistent with the Dictionary of Occupational Titles ("DOT") regarding the skill level and exertion level of two of the three jobs that the ALJ concluded that the plaintiff could perform, and that the ALJ "unreasonably" evaluated the plaintiff's treatment. Docket Entry No. 12, at 6-13. The plaintiff also argues that the ALJ made medical judgments beyond his knowledge and understanding. Docket Entry No. 12, at 13-14.

**1. The ALJ's hypothetical questions and RFC assessment were sufficiently specific.**

The plaintiff argues that the ALJ's RFC assessment and hypothetical questions posed to the VE were unclear and/or ambiguous. Docket Entry No. 12, at 6-7. Specifically, the plaintiff contends that the ALJ's sit/stand option did not specify the frequency with which he needed to alternate between sitting and standing, that the ALJ incorrectly used the term "restricted" to described his ability to squat and bend instead of using "occasional" or "frequent," and that the hypothetical questions that the ALJ posed to the VE were vague and required the VE to make determinations about functional limitations. *Id.*

According to Social Security Ruling 96-6p ("SSR 96-6p)

[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to

consult a vocational resource[17] in order to determine whether the individual is able to make an adjustment to other work.

Soc. Sec. Rul. 96-9P, 1996 WL 374185 at *7 (July 2, 1996). As noted by the Commissioner, the ALJ did identify the frequency of the plaintiff's sit/stand option and made the VE aware of it in the second hypothetical that he posed to the VE. Docket Entry No. 19, at 16-17. The second hypothetical question focused on the limitations in Dr. Davis's medical assessment. (Tr. 492-93.) The ALJ asked the VE what type of work the plaintiff could perform if he were limited to

> lifting 10 to 20 pounds on an occasional basis, and 10 pounds frequently, and standing and walking about four hours a day with only one hour of uninterrupted time and, once again, sitting is generally unlimited. It also has limitations on bending consistent with low back disorders, and then it also limits squatting. That sounds like a sit/stand option to me . . . .

*Id.* The sit/stand option refers back to the limitations of "standing and walking about four hours a day with only one hour of interrupted time" and to "sitting is generally unlimited." *Id.*

In the fifth hypothetical question, upon which the ALJ relied in part in making his RFC determination, the ALJ asked the VE to consider what type of work the plaintiff could perform if "the total standing and walking capacity [was] two hours, and then you put the waist motion sort of restrictions, the bending and twisting restrictions for a low back problem, the limited squatting, the sit/stand option, and allows the change of position." (Tr. 493-94.) Although the ALJ did not specify a certain amount of time for the sit/stand option in the fifth hypothetical, it is clear that the VE understood that the ALJ was referring back to the sit/stand option in the second hypothetical and he concluded that "there would be jobs that would accommodate that profile." (Tr. 494.) Since the ALJ's fifth hypothetical adopted the sit/stand option from his second hypothetical, allowing the plaintiff to sit for unlimited amounts of time but requiring that he only

---

[17] A vocational resource consists of written resources, "such as the DOT, the SCO, the Occupational Outlook Handbook, or County Business Patterns," and "[i]n more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *9 (July 2, 1996).

stand/walk for "four hours a day with only one hour of interrupted time," the ALJ sufficiently described the plaintiff's sit/stand option.

Next, the plaintiff contends that the term "restricted," which the ALJ used to describe the plaintiff's ability to bend and squat, is improper because it is not "a technical term in social security law." Docket Entry No. 12, at 6-7. The plaintiff explains that he is not arguing that the ALJ must "use the terms 'occasional' or 'frequent' to describe a bending or squatting restriction;" rather he contends that the term "restricted" is materially ambiguous when used to describe postural limitations. Docket Entry No. 22, at 3.

The postural limitations subsection of SSR 96-9p focuses on the varying degrees of restriction of balancing and stooping and how it affects sedentary work. Soc. Sec. Rul. 96-9P, 1996 WL 374185 at *7-8 (July 2, 1996). SSR 96-9p does not indicate which descriptors are preferred, but it does encourage the adjudicator to consult with a vocational resource, such as a VE,[18] if the postural restrictions "erode . . . the unskilled occupational base of sedentary work." Soc. Sec. Rul. 96-9p, 1996 WL 374185 at *7-8 (July 2, 1996). In this case, the ALJ's determination that the plaintiff's ability to bend and to squat was "restricted" (tr. 19) indicates that his postural activities were limited and it logically follows that such restrictions would take away from or "erode . . . the unskilled occupational base of sedentary work." Soc. Sec. Rul. 96-9p, 1996 WL 374185 at *7-8 (July 2, 1996). The ALJ complied with SSR 96-9p by asking the VE what type of work the plaintiff could perform if his bending, twisting, and waist motion were restricted and if his squatting were limited, and the ALJ relied on the VE's answer in concluding that there was still work available that the plaintiff could perform. (Tr. 22-23, 493-94.)

---

[18] SSR 96-9p provides that "[a]t the hearings and appeals levels, vocational experts (VEs) are vocational professionals who provide impartial expert opinion during the hearings and appeals process either by testifying or by providing written responses to interrogatories. A VE may be used before, during, or after a hearing." Soc. Sec. Rul. 96-9P, 1996 WL 374185 at *10 n.8 (July 2, 1996).

The plaintiff also provides no authority that requires the ALJ to use the words "occasional" or "frequent" to describe a plaintiff's postural limitations. Docket Entry No. 12, at 6. However, there are several cases in which courts have upheld the ALJ's findings that use terms other than "occasional" or "frequent" to described the plaintiff's postural limitations. *Cecil v. Sec'y of Health & Human Servs.*, 66 F.3d 325, 1995 WL 551832, at *2 (6th Cir. Sept. 15, 1995) (determining that the plaintiff had the RFC "to perform light work . . . with limited bending"); *Donegan v. Sec'y of Health & Human Servs.*, 1 F.3d 1240, 1993 WL 291301, at *2 (6th Cir. Aug. 2, 1993) (finding that the plaintiff had the RFC "to perform the physical exertion requirements of work except for prolonged standing or walking, lifting over 10 pounds, bending, squatting, climbing, or performing work not allowing for a sit/stand option"); *Parton v. Comm'r of Soc. Sec.*, 2011 WL 2174996, at *4 (E.D. Tenn. May 11, 2011) (Magistrate Judge's Report and Recommendation finding that the plaintiff's RFC was "further restricted by several postural limitations"); *Beumer v. Astrue*, 2010 WL 2650728, at *2 (E.D. Tenn. June 4, 2010) (Magistrate Judge's Report and Recommendation concluding that the plaintiff "retained the RFC to perform sedentary work, with additional postural and environmental limitations"); *Connor v. Astrue*, 2010 WL 455261, at *1 (M.D. Tenn. Feb. 1, 2010) (Nixon, J.) (determining that the plaintiff had an RFC that included "limited postural activities like bending").

Finally, the hypothetical that the ALJ posed to the VE, upon which he subsequently relied to determine the plaintiff's RFC, was not vague and it did not require the VE to make determinations about the plaintiff's functional limitations. The Regulations allow ALJs to rely on a VE at step five to determine whether a plaintiff is able to perform any work. 20 C.F.R. § 404.1560(c). The VE's testimony, in response to an ALJ's hypothetical question, will be considered substantial evidence "'only if that [hypothetical] question accurately portrays [the

plaintiff's] individual physical and mental impairments.'" *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 785 (6th Cir. Feb. 24, 2009) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987)). *See also Anderson v. Comm'r of Soc. Sec.*, 2010 WL 5376877, at *3 (6th Cir. Dec. 22, 2010) (citing *Felisky*, 35 F.3d at 1036) ("As long as the VE's testimony is in response to an accurate hypothetical, the ALJ may rely on the VE's testimony to find that the [plaintiff] is able to perform a significant number of jobs."); *Colvin v. Barnhart*, 475 F.3d 727, 732 (6th Cir. 2007) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir.2001)) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."). Although a hypothetical must accurately portray a plaintiff's impairments, an ALJ "is required to incorporate only those limitations that he accepts as credible." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993)).

In this case, the ALJ asked the VE to consider what type of work the plaintiff could perform if he could stand/walk for a total of two hours "and then you put the waist motion sort of restrictions, the bending and twisting restrictions for a low back problem, the limited squatting, the sit/stand option, and allows the change of position," and the VE answered that the plaintiff could work as an electronics tester, machine tender, and table worker. (Tr. 493-94.) As discussed *supra*, the ALJ was sufficiently specific in describing the plaintiff's postural limitations as restricted and "limited" and in determining that he needed a sit/stand option. *Id.* He also identified the plaintiff's lower back problem as the source of the plaintiff's limitations and restrictions. *Id.*

In sum, the ALJ's hypothetical to the VE was sufficiently specific and properly incorporated the plaintiff's physical limitations, and thus the VE was effectually precluded from having to make any determination regarding the plaintiff's functional limitations.

**2. Three of the four jobs that the VE determined the plaintiff could perform are inconsistent with the RFC assigned to the plaintiff by the ALJ, but the VE did identify at least one job that was consistent with the plaintiff's RFC.**

The plaintiff contends that the VE's testimony is flawed because it conflicts with the DOT. Docket Entry No. 12, at 7-12. Specifically, the plaintiff argues that the VE erred in describing the skill and exertion level of three out of the four jobs that he concluded that the plaintiff could perform. *Id.*

The ALJ concluded that the plaintiff's RFC allows him to "occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk 2 hours in an 8-hour workday, and sit for six hours in an 8-hour workday with a sit/stand option, and restricted bending and squatting." (Tr. 19, 22.) He asked the VE, given the above limitations, what type of work the plaintiff could perform, and the VE answered that the plaintiff could work as an electronics tester, machine tender, and table worker. (Tr. 493-94.) The VE classified the electronics tester job as light work and the machine tending job and the table worker position as both sedentary and light work. (Tr. 494.)

The plaintiff's attorney then asked the VE to identify "some representative DOT numbers" for those jobs and the VE answered

> [a]nd, again, there is more than one, but I'll give you at least a sample of one from each cluster. And starting with the electronics tester, the DOT, and one of the DOTs is 726.684-026, and I'll give you one other for electronics tester. It is 726.261-018. Let's see. Then we have a machine tender, and one of the machine tender DOTs would be 715.685-070. There is [sic] numerous others that would be an example of it.

-21-

(Tr. 495.)  The ALJ next asked the VE for the DOT number for the table worker position and he replied

> [a]nd this one is for a sedentary machine tending job.  There is [sic] many, many more.  And moving on to the last one, the table worker, and let's see which one I've got here, and one of the sedentary DOTs for table worker would be 739.687-182, and there is [sic] numerous other DOTs for that as well, and both as sedentary and light.

*Id.*  The ALJ also satisfied his affirmative duty and asked the VE whether the VE's testimony was "consistent with the DOT," and the VE answered that his testimony was consistent with the DOT. (Tr. 496.)  *See Lindsley v. Comm'r of Soc. Sec*, 560 F.3d 601, 606 (6th Cir. 2009) (quoting SSR 00-4p, 2000 WL 1898704, at 4) ("[T]he Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'").

The ALJ ultimately concluded that the plaintiff had a Specific Vocational Preparation ("SVP") level for unskilled work[19] and an exertional strength rating[20] to perform limited sedentary work (tr. 23), and, in relying on the VE's testimony, that the plaintiff could work as an electronics tester, machine tender, and table worker. (Tr. 493-94.)  The plaintiff contends that the ALJ erred in relying on the VE's testimony that the plaintiff could perform work as an

---

[19] The SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Dictionary of Occupational Titles 1009 (4th ed. 1991).  It is measured on a scale from 1-9 on which the higher number assigned to a job, the greater the skill that is required to perform that job. *Id.*  Unskilled work has an SVP level of one to two and is classified as work that requires "[a]nything beyond short demonstration up to and including 1 month." *Id.*

[20] The exertional strength rating "reflects the estimated overall strength requirement of the job . . . the strength requirements which are considered to be important for average, successful work performance." U.S. Dep't of Labor, Dictionary of Occupational Titles 1012 (4th ed. 1991).  The exertional strength rating "is expressed by one of five terms: Sedentary, Light, Medium, Heavy, and Very Heavy." *Id.*

electronics tester[21] and machine tender because the SVP and exertional levels for those jobs, identified in the DOT by specific classification numbers provided by the VE, did not align with the unskilled SVP or sedentary exertional level that the ALJ assigned to the plaintiff. Docket Entry No. 12, at 9-12. The DOT classifies the first electronics tester position (726.684-026) as light work with an SVP of three, indicating that it is semi-skilled; the second electronics position (726.261-018) as medium work with an SVP of seven, indicating that it is skilled; the position of machine tender (715.685-070) as sedentary work with an SVP of three, indicating that it is semi-skilled; and the position of table worker (739.687-182) as sedentary work with and SVP of 2, indicating that it is unskilled work. U.S. Dep't of Labor, Dictionary of Occupational Titles 717, 730, 732-33, 774, 1009 (4th ed. 1991).

The Court agrees with the plaintiff that there is a conflict between his assigned RFC and the jobs that the ALJ determined that he is able to perform, but it is not as a result of the VE's testimony. The VE did conclude that the plaintiff could work as an electronics tester, machine tender, and table worker, and he did provide specific DOT identification numbers for two electronics positions and one machine tender job that had SVPs of semi-skilled and skilled and exertional levels of sedentary, medium, and light (tr. 494-95), but this was in response to a hypothetical from the ALJ that described the plaintiff's physical limitations but did not include a SVP or exertional determination. (Tr. 493-94.) It was not until after the hearing that the ALJ ultimately determined that the plaintiff was limited to unskilled and sedentary work (tr. 23),

---

[21] The VE testified that the plaintiff could perform two different electronics tester positions. (Tr. 495.) He noted that the first electronics tester position had a DOT identification number of 726.684-026, which the DOT classified as light and semi-skilled work, and that the second electronics tester position had a DOT identification number of 726.261-018, which the DOT classified as medium and skilled work. Tr. 495; U.S. Dep't of Labor, Dictionary of Occupational Titles 730, 732-33, 1009 (4th ed. 1991).

which further restricted the plaintiff's RFC, but the VE was not provided with a hypothetical including that information when he testified at the hearing. (Tr. 493-95.)

The plaintiff correctly points out that the SVP and exertional levels for three out of the four jobs identified by the VE exceeds the ALJ's RFC determination that the plaintiff could perform unskilled and sedentary work. Docket Entry No. 12, at 9-11. As discussed *supra*, the DOT classifies the first electronics tester position (726.684-026) as light and semi-skilled work, the second electronics position (726.261-018) as medium and skilled work, and the machine tender position (715.685-070) as sedentary and semi-skilled work. U.S. Dep't of Labor, Dictionary of Occupational Titles 717, 730, 732-33, 1009 (4th ed. 1991). However, even if those three positions are excluded because they are inconsistent with the ALJ's RFC determination, it was still reasonable for the ALJ to conclude that the plaintiff could perform work as a table worker since the DOT identification code provided by the VE classifies that position as sedentary and unskilled work. *Id.* at 774. *See also Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374-75 (6th Cir. March 1, 2006) (citing *Troxal v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 80, 83 (6th Cir. Sept. 21, 2004 ) ("[E]ven if the two positions about which there were inconsistencies had been excluded, the ALJ could still have reasonably found that [the plaintiff] could perform the third position of assembler.").

In sum, as the plaintiff conceded (Docket Entry No. 12, at 9), the ALJ identified at least one job, i.e., table worker, that was consistent with the plaintiff's RFC and did not conflict with the DOT with respect to the skill and exertional levels of the job, and the VE testified that there were "in excess of 4,300" table worker positions in the Tennessee labor market. Tr. 494. *See Brown v. Barnhart*, 408 F.Supp.2d 28, 36 (D.D.C. 2006) ("When an expert testifies that a claimant can perform multiple jobs and at least one of those jobs does not conflict with the DOT

and exists in significant numbers in the national economy, a decision by the SSA based on the expert's testimony is supported by substantial evidence.")

The plaintiff also argues that the VE's testimony conflicts with the DOT because the VE testified that the plaintiff could perform work that allows for a sit/stand option, a limitation that is not specifically addressed in the DOT. Docket Entry No. 12, at 10-12. This argument is unavailing since it is well-established that a VE's testimony that an individual can perform work with a sit/stand option does not conflict with the DOT. *See, e.g.*, *Baranich v. Barnhart*, 128 F. App'x 481, 486 n.3 (6th Cir. Apr. 19, 2005) ("[The plaintiff] is therefore incorrect to argue that the ALJ could not include a sit-stand option when such an option is not indicated in the DOT, as the DOT is only one source to be used in assessing the availability of jobs for the claimant."); *Fletcher v. Astrue*, 2011 WL 2222058, at *3 (E.D. Tenn. May 11, 2011) (rejecting the plaintiff's argument that DOT conflicts with sit/stand option simply because "the DOT does not address the issue of sit/stand options"); *Manners v. Soc. Sec. Admin.*, 2011 WL 820653, at *8 (M.D. Tenn. Mar. 2, 2011) (Wiseman, J.) ("While the DOT does not recognize any particular job's amenability to a sit/stand option as such, it has been held that no conflict between the testimony of the expert and the DOT is created by the mere imposition of a sit/stand option, such that would require resolution by the ALJ in order to pass muster."); *Fort v. Comm'r of Soc. Sec.*, 2010 WL 3789598, at *4 (E.D. Mich. Sept. 22, 2010) (a VE's testimony regarding the plaintiff's assigned sit/stand option did not conflict with the DOT but instead supplemented it).

### 3. The ALJ did not err in analyzing the plaintiff's subjective complaints of pain.

The plaintiff contends that the ALJ erred in evaluating the credibility of his subjective complaints of back pain. Docket Entry No. 12, at 12-14. Specifically, the plaintiff argues that

the ALJ incorrectly concluded that the plaintiff "did not receive ongoing treatment for pain after his spinal fusion that would corroborate his complaints of pain" and that the ALJ "made medical judgments beyond his ken" in determining that the plaintiff's pain was exaggerated. *Id.* at 13-14.

The ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 958 (N.D. Ohio 2003) (citing *Felisky*, 35 F.3d at 1036).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the Social Security Administration ("SSA") and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R.

§§ 404.1529, 416.929; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit in *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[22] The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

The ALJ acknowledges that there is objective medical evidence of the plaintiff's medically determinable impairments, satisfying the first prong of the *Duncan* test. (Tr. 20.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." If the objective medical evidence "does not confirm the severity of a claimant's pain," the SSA provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. §§ 404.1529(c), 416.929(c). *Blair v. Comm'r of Soc. Sec.*, No. 10-5104, at *9 (6th Cir. July 14, 2011). The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of his pain simply because current objective medical evidence does not fully

---

[22] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

corroborate the plaintiff's statements. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Besides reviewing medical records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 404.929(c)(3).[23]

The Court agrees with the plaintiff that the ALJ erred in determining that he did not receive ongoing treatment for lower back pain after undergoing a lumbar fusion procedure in March of 2003. Docket Entry No. 12, at 12-13. After the plaintiff's lumbar fusion procedure, the record clearly indicates that Dr. Boone and Dr. Arradondo treated him for lower back pain on multiple occasions (tr. 224-35, 382-406), that he was diagnosed with and received treatment for lower back pain at Vine Hill (tr. 226-28), and that he presented to TPA for three years of pain management for his lower back pain. (Tr. 311-70.) However, the plaintiff's contention that the ALJ made medical judgments about his condition is not well supported. Docket Entry No. 12, at 13-14. The ALJ, in assessing the credibility of the plaintiff's subjective complaints of pain, noted that

> [i]n assessing the severity, the claimant has complained of severe back pain ever since the surgery; however, subsequent MRIs identified no new problems in the lumbar spine, with good placement of the hardware, and a thoracic MRI showed only mild degeneration. This suggested his pain should have been resolved to a much greater degree that it did, which lends support to symptom magnification given his history of drug and alcohol abuse.

---

[23] The seven factors under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) include: (i) the plaintiff's daily activities, (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms, (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms, (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.), and (vii) other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

(Tr. 22.)  The ALJ did not substitute his own medical judgments for those in the record; rather he analyzed MRIs of the plaintiff's lower back in order to determine whether the objective record medical evidence supported the severity of the plaintiff's alleged complaints of pain. *Id.*  This type of analysis and evaluation does not run afoul of the Regulations. 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.").

In making his credibility determination, the ALJ not only considered the objective medical evidence, as discussed *supra*, but he also relied on the medical records from treating and evaluating physicians and on the plaintiff's activities of daily living. (Tr. 20-22.)  First, between July and October of 2003, Dr. Boone, the plaintiff's neurosurgeon, opined that the plaintiff's lower back pain was "essentially stable with respect to his symptomology," that he had 5/5 strength in his upper and lower extremities, and that his back pain was intermittent. (Tr. 232-39.) In December of 2004, Dr. Payne, a consultative examining physician, found that the plaintiff's range of motion in his cervical spine was normal, that his dorsolumbar spine range of motion was reduced, and that his strength was five out of five in all major muscle groups. (Tr. 268.)  In

August of 2005, the plaintiff presented to Centennial and was found to have a steady gait (tr. 416) and "good motor strength in both upper and lower extremities."[24] (Tr. 421.) Further, on three occasions between June of 2007 and February of 2008, the plaintiff reported to Dr. Arradondo that his "current treatment [was] making a difference in [his] life." (Tr. 384, 393, 401.) Finally, in May of 2006, the plaintiff related to Dr. Pettigrew, a DDS consultative examining psychologist, that "he is independent in meeting all of his personal needs," drives, does laundry, shops, and does minimal household chores (tr. 289), and he testified at his hearing in April of 2008, that he does not drive but that he is able to do laundry, prepare simple meals, and occasionally shop for groceries. (Tr. 486-88.)

In sum, the objective medical evidence, the medical reports of the plaintiff's treating and examining sources, and the plaintiff's activities of daily living demonstrate that his physical impairments cause him a certain amount of pain, but the same record medical evidence does not support the plaintiff's subjective complaints that his pain is disabling.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 11) be DENIED and that this action be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the

---

[24] The plaintiff testified that he occasionally uses a cane "to take a little, you know, off my back" but that a doctor did not prescribe a cane for him to use. (Tr. 483-84.)

right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge